Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry Brownlee (KB 0823)
kbrownlee@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC; IDEAVILLAGE PRODUCTS CORP.; and TELEBRANDS CORP. d/b/a BULBHEAD<br>*Plaintiffs*<br><br>v.<br><br>RYAN ANDERSEN d/b/a AS SEEN ON TV & BEYOND d/b/a AS SEEN ON TV PROS d/b/a WWW.ASSEENONTVPROS.COM; and AS SEEN ON TV PROS d/b/a WWW.ASSEENONTVPROS.COM<br>*Defendants* | **CIVIL ACTION No.**<br>**20-cv-3703**<br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

Allstar Marketing Group, LLC, a New York limited liability company ("Allstar"), Ideavillage Products Corp. ("Ideavillage"), a New Jersey corporation, and Telebrands Corp. d/b/a BulbHead ("Telebrands"), a New Jersey corporation, (Allstar, Ideavillage, and Telebrands are collectively, hereinafter, "Plaintiffs") by and through their undersigned counsel, allege as follows:

**NATURE OF THE ACTION**

1.      This action involves claims for counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); trademark

infringement of Plaintiffs' federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; trademark infringement of Plaintiffs' unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Action"), arising from Defendant Ryan Andersen d/b/a As Seen On TV & Beyond d/b/a As Seen On TV Pros d/b/a www.asseenontvpros.com's ("Andersen") and Defendant As Seen on TV Pros d/b/a www.asseenontvpros.com's ("ASOTV Pros") (Andersen and ASOTV Pros are collectively, hereinafter, "Defendants") infringement of Plaintiffs' Marks (as defined *infra*) and Plaintiffs' Works (as defined *infra*), including without limitation, by Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of unlicensed, infringing and/or counterfeit versions of Plaintiffs' ASOTV Products (as defined *infra*).

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, including via their fully interactive website(s), supply their goods (including, upon information and belief, Infringing Products, as defined *infra*) and services to consumers in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district, and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' infringing actions caused injury to Plaintiffs in New York and in this judicial district, such that Defendants should reasonably expect their actions to have consequences in New York and in this judicial district.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct business in this judicial district, a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and harm to Plaintiffs has occurred in this district.

## THE PARTIES

5.      Allstar is a New York limited liability company, having its principal place of business at 2 Skyline Drive, Hawthorne, NY 10532.

6.      Ideavillage is a New Jersey corporation, having its principal place of business at 155 Route 46 West, 4th Floor, Wayne, NJ 07470.

7.      Telebrands is a New Jersey corporation, having its principal place of business at 79 Two Bridges Road, Fairfield, NJ 07004.

8.     Upon information and belief, Andersen is an individual, who resides at 7427 North 108th Street, Omaha, Nebraska 68142.

9.     Upon information and belief, ASOTV Pros is an entity that owns and/or operates www.asseenontvpros.com, through which it offers for sale and/or sells Infringing Products, which maintains a mailbox at 3606 N 156th Street, #101-328, Omaha, Nebraska 68116.

10.     Upon information and belief, and at all relevant times hereto, Andersen was and is an officer, director, principal, shareholder, owner and/or the sole proprietor of ASOTV Pros, and the unlawful acts of ASOTV Pros, as alleged herein, were performed within the course and scope of such position(s).  Defendants enriched themselves by their fraudulent, illegal conduct as alleged herein, while Plaintiffs suffered enormous financial injury.

## GENERAL ALLEGATIONS

### Plaintiffs' ASOTV Products

11.     Plaintiffs are leading developers, producers, marketers, and distributors of quality, innovative consumer products, which Plaintiffs initially promote and sell through national direct response television advertising commonly called "As Seen On TV" ("ASOTV Product(s)").

12.     Plaintiffs also promote and sell their ASOTV Products at the retail level at well-known mass retail outlets, including, for example: Wal-Mart, Target, Bed Bath & Beyond, Rite-Aid, CVS and Walgreens; through catalog companies; online, through their own websites and their retail customers' websites; as well as through a network of international distributors, among other channels of trade.

13.     More specifically, Plaintiffs promote and sell their ASOTV Products through their corporate        websites:        https://www.allstarmg.com,        https://www.ideavillage.com, https://www.telebrands.com, and https://www.bulbhead.com, and/or individual product websites specifically designed and developed by Plaintiffs to sell each of their ASOTV Products, using

4

and/or featuring Plaintiffs' direct response advertising and through which consumers can purchase the ASOTV Product advertised directly from Plaintiffs.

14.     Plaintiffs are among the most well-known, well-respected sources of many of the most popular and most successful ASOTV Products sold in the United States.

## Allstar and Its Reputable Allstar Products

15.     A few of Allstar's most recent successful ASOTV Products, all of which are marketed and sold under the respective distinctive trademarks, are: 1) its Socket Shelf product, which is a wall outlet expander that features a built-in storage shelf, thereby creating extra storage space over the top of any outlet ("Socket Shelf Product(s)"); 2) its MagicBax products, which are earring backs that keep earrings in a perfect position all day long—perfect for bad piercings, stretched lobes and heavy earrings ("MagicBax Products"); and 3) its 3 Second Lash products, which are magnetic eyelash extensions that accentuate natural eyelashes in seconds ("3 Second Lash Products") (the Socket Shelf Products, MagicBax Products, and 3 Second Lash Products are collectively, hereinafter, "Allstar Product(s)").  Images of the Allstar Products are attached hereto as **Exhibit A** and incorporated herein by reference.

16.     In addition to the retail channels for the ASOTV Products described above, Allstar also markets and/or sells the AllStar Products through its websites entirely dedicated to the same, www.socketshelf.com, www.magicbax.com, and www.3secondlashtips.com.

17.     The Allstar Products, which have all achieved great success, generally each retail for the following prices: $29.99 for the Socket Shelf Product, $19.99 for the MagicBax Products, and $29.95 for the 3 Second Lash Products.

18.     Allstar has gained significant common law trademark and other rights in its Allstar Products, through its use, advertising and promotional efforts.

19.     More specifically, Allstar has used SOCKET SHELF (the "Socket Shelf Mark") on or in connection with the Socket Shelf Products since at least as early as December 2018, and continues to use the Socket Shelf Mark in commerce on or in connection with the Socket Shelf Products.

20.     Allstar has also protected its valuable rights by filing for and obtaining federal trademark registrations.

21.     For example, Allstar is the owner of the following U.S. Trademark Registration Nos.: 5,587,958 for "MAGICBAX" for a variety of goods in Class 14, with a date of first use of December 13, 2017 (the "MagicBax Mark"); and 5,425,466 for "3 SECOND LASH" for a variety of goods in Class 3, with a date of first use of September 28, 2017 (the "3 Second Lash Mark") (the Socket Shelf Mark, MagicBax Mark, and 3 Second Mark are collectively, hereinafter, "Allstar Mark(s)").  True and correct copies of the certificates of registration for the MagicBax Mark and 3 Second Lash Mark are attached hereto as **Exhibit B** and incorporated herein by reference.

22.     The MagicBax Mark and 3 Second Lash Mark are currently in use in commerce in connection with the MagicBax Products and 3 Second Lash Products, respectively.  They were first used in commerce on or before the dates of first use, as reflected on the certificates of registrations attached as **Exhibit B**.

23.     In addition, Allstar owns both registered and unregistered copyrights relating to the Allstar Products.

24.     For example, Allstar owns the following U.S. Copyright Registration Nos.: VAu 1-365-333, covering the Socket Shelf Packaging, VA 2-135-992, covering the Socket Shelf Website, VA 2-084-386, covering the MagicBax Retail Packaging, VA 2-073-731, covering the 3 Second Lash Packaging, and VA 2-108-626, covering the 3 Second Lash Instruction Manual (collectively,

hereinafter, "Allstar Work(s)").  True and correct copies of printouts from the U.S. Copyright Office's online record, U.S. copyright registration certificates, and their corresponding deposit materials, for the Allstar Works are attached hereto as **Exhibit C** and incorporated herein by reference.

### Ideavillage and Its Reputable MicroTouch Products

25.     One of Ideavillage's most popular and successful brands of ASOTV Products is a line of personal hair removal tools marketed and sold under Ideavillage's distinct MicroTouch family of trademarks, namely, MICROTOUCH, MICROTOUCH MAX, MICROTOUCH ONE, MICROTOUCH SWITCHBLADE, TOUGH BLADE and MICROTOUCH SOLO ("MicroTouch Products").  Images of examples of the MicroTouch Products are attached hereto as **Exhibit D** and incorporated herein by reference.

26.     In addition to the retail channels for the ASOTV Products described above, Ideavillage also markets its MicroTouch Products on its own website, www.ideavillage.com, as well as through websites specific to the various MicroTouch Products.

27.     The MicroTouch Products, which have achieved great success, generally retail for between $10.00 and $19.99.

28.     While Ideavillage has gained significant common law trademark and other rights in its MicroTouch Products, through its use, advertising and promotional efforts, Ideavillage has also protected its valuable rights by filing for and obtaining federal trademark registrations.

29.     For example, Ideavillage is the owner of the following U.S. Trademark Registration Nos.: 3,671,446 for "IDEAVILLAGE" for goods in Classes 8 and 21, with a date of first use of October 31, 1999 for goods in Class 8, and May 27, 2003 for goods in Class 21; 2,884,308 for "MICROTOUCH" for goods in Class 8, with a constructive date of first use of August 1, 2003; 4,183,150 for "MICROTOUCH MAX" for goods in Class 8, with a date of first use of September

30, 2010; and 5,302,508 for "MICROTOUCH SOLO" for goods in Class 8, with a constructive date of first use of April 28, 2016 (the marks covered by the foregoing registrations are collectively, hereinafter, the "Ideavillage Mark(s)").  True and correct copies of the registration certificates for the Ideavillage Marks are attached hereto as **Exhibit E** and incorporated herein by reference.

30.     The Ideavillage Marks are currently in use in commerce in connection with the MicroTouch Products.  The Ideavillage Marks were first used in commerce on or before the date of first use as reflected in the registrations attached hereto as **Exhibit E**.

31.     In addition, Ideavillage owns both registered and unregistered copyrights related to the MicroTouch Products.

32.     For example, Ideavillage is the owner of U.S. Copyright Registration No. VA-2-090-848, covering the MicroTouch Solo Packaging Artwork(the "MicroTouch Work").  A true and correct copy of the U.S. copyright registration certificate for the MicroTouch Work, and its corresponding deposit materials, are attached hereto as **Exhibit F** and incorporated herein by reference.

**Telebrands and Its Reputable Telebrands Products**

33.     A few of Telebrands' most recent successful ASOTV Products, all of which are marketed and sold under the respective distinctive trademarks, are: 1) its Cup Call product, which is a next-generation phone mount that fits right in a vehicle's cup holder so a consumer's phone is always at his or her fingertips ("Cup Call Product(s)"); and 2) its Pedi Vac product, which is a motorized callus remover with a built-in vacuum ("Pedi Vac Products") (the Cup Call Products and Pedi Vac Products are collectively, hereinafter, "Telebrands Product(s)").  Images of examples of the Telebrands Products are attached hereto as **Exhibit G** and incorporated herein by reference.

34.    In addition to the retail channels for the ASOTV Products described above, Telebrands also markets and sells its Telebrands Products through its websites entirely dedicated to the same: www.getcupcall.com and www.buypedivac.com.

35.    The Telebrands Products, which have all achieved great success, generally each retail for $19.99.

36.    Telebrands has gained significant common law trademark and other rights in its Telebrands Products, through its use, advertising and promotional efforts.  Telebrands and DaVinci CSJ, LLC have also protected their valuable rights by filing for and obtaining federal trademark registrations.

37.    More specifically, Telebrands is the owner of the following U.S. Trademark Registration Nos. 4,878,619 for  for services in Class 35, with a constructive date of first use of February 4, 2015, and 4,878,620 for "BULBHEAD" for services in Class 35, with a constructive date of first use of February 4, 2015 (collectively, hereinafter, the "BulbHead Marks"); and is the exclusive licensee of U.S. Trademark Serial No. 88/703,422 for "CUP CALL" for goods in Class 12, with a constructive date of first use of November 22, 2019 ("Cup Call Mark"), and U.S. Trademark Registration No. 5,815,156 for  for goods in Class 8, with a date of first use of August 18, 2018 ("Pedi Vac Mark") (the BulbHead Marks, Cup Call Mark and Pedi Vac Mark are collectively, hereinafter, "Telebrands Mark(s)").  True and correct copies of the application for the Cup Call Mark and certificates of registration for the Telebrands Marks are attached hereto as **Exhibit H** and incorporated herein by reference.[1]

---

[1] Although the certificates of registration for the BulbHead Marks list Bulbhead.com LLC as the owner, all rights have been assigned to Telebrands, per the assignments on file with the United States Patent and Trademark Office.

38.     Per an agreement between Telebrands and DaVinci CSJ, LLC, Telebrands is the exclusive licensee of the Cup Call Mark and Pedi Vac Mark in the United States, and has the right to enforce the same.

39.     The Telebrands Marks are currently in use in commerce in connection with the Telebrands Products.  They were first used in commerce on or before the date of first use, as reflected on the certificates of registrations attached as **Exhibit H**.  The Call Cup Mark was first used in commerce by Telebrands since at least as early as January 2020.

40.     In addition, Telebrands owns both registered and unregistered copyrights relating to the Telebrands Products.

41.     For example, Telebrands owns the following U.S. Copyright Registration Nos.: VA 2-186-458, covering the CUP CALL Packaging, VA 2-132-607, covering the PEDI VAC Packaging, and TX 8-659-289, covering the PEDI VAC Instruction Manual (collectively, hereinafter, "Telebrands Work(s)").  True and correct printouts from the U.S. Copyright Office's online record, and the corresponding deposit materials for the registrations, for the Telebrands Works are attached hereto as **Exhibit I** and incorporated herein by reference.

### The Well-Known Nature of Plaintiffs' ASOTV Products

42.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in Plaintiffs' ASOTV Products, Plaintiffs' respective Allstar Marks, Ideavillage Marks, and Telebrands Marks (collectively, hereinafter, "Plaintiffs' Marks") and Plaintiffs' respective Allstar Works, MicroTouch Work, and Telebrands Works (collectively, hereinafter, "Plaintiffs' Works").

43.     The success of Plaintiffs' ASOTV Products is due in part to Plaintiffs' marketing and promotional efforts.  These efforts include advertising and promotion through television,

Plaintiffs' websites, retailer websites and other internet-based advertising, print, participation in trade shows, among other efforts, both domestically and abroad.

44.     Plaintiffs' success is also due to their use of the highest quality materials, processes and facilities in manufacturing their ASOTV Products.

45.     In addition, Plaintiffs owe a substantial amount of the success of their ASOTV Products to their third-party inventors, consumers and the word-of-mouth buzz that such inventors and consumers have generated.

46.     Plaintiffs' marketing and promotional efforts, the quality of Plaintiffs' ASOTV Products and the word-of-mouth buzz generated by their inventors and consumers, have made Plaintiffs' ASOTV Products and Plaintiffs' Marks prominently placed in the minds of the public. Retailers, retail buyers, consumers, and members of the public have become familiar with Plaintiffs' ASOTV Products, and associate them exclusively with Plaintiffs.

47.     Plaintiffs and Plaintiffs' Marks have acquired a valuable reputation and goodwill among the public as a result of such associations (*i.e.*, have acquired distinctiveness or secondary meaning).

48.     Plaintiffs have gone to great lengths to protect their interests in and to Plaintiffs' ASOTV Products, Plaintiffs' Marks and Plaintiffs' Works.  No one other than Plaintiffs are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing Plaintiffs' Marks and Plaintiffs' Works without the express permission of Plaintiffs.

## Defendants' Wrongful and Infringing Conduct

49.     Particularly in light of Plaintiffs' success, their respective ASOTV Products, as well as the reputation they have gained, Plaintiffs and their ASOTV Products have become targets for

unscrupulous individuals and entities, who wish to capitalize on the goodwill, reputation, and fame that Plaintiffs have amassed in their ASTOV Products, Plaintiffs' Marks, and Plaintiffs' Works.

50.     Plaintiffs investigate and enforce against such activity, and through such efforts, learned of Defendants' actions which vary and include, but are not limited to, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing or used in connection with one or more of Plaintiffs' Marks and/or Plaintiffs' Works, and/or products in packaging and/or containing labels and/or hang tags bearing one or more of Plaintiffs' Marks and/or Plaintiffs' Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to Plaintiffs' Marks and/or Plaintiffs' Works, and/or products that are identical or confusingly or substantially similar to the ASOTV Products (hereinafter collectively referred to as "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the State of New York, through Defendants' website, located at www.asseenontvpros.com ("Defendants' Website").  Printouts of examples of listings for Infringing Products on Defendants' Website are included in **Exhibit J**, attached hereto and incorporated herein by reference.

51.     Defendants' Website is solely dedicated to products that Defendants allege constitute "As Seen on TV Products"—products that are the very core of Plaintiffs' businesses.

52.     In order to investigate Defendants' infringing activities, in or about November 2019, Ideavillage placed test buys for Infringing Products via Defendants' Website, which were confirmed by Ideavillage as infringing and/or counterfeit.

53.     A side-by-side comparison of Ideavillage's authentic ASOTV Products to some of the Infringing Products, or the packaging thereof, received by Ideavillage appears on the following page:

| **Ideavillage's ASOTV Products** | **Infringing Products[2]** |
|:---:|:---:|
|  |  |
|  |  |

---

[2] The first Infringing Product depicted above was received by Ideavillage as depicted, without any packaging, and in response to Ideavillage's purchase of "110-MTM Micro Touch Max Personal Trimmer – As Seen on TV" from Defendants' Website.

54.     Thereafter, on or about January 24, 2020, Ideavillage, through Plaintiffs' counsel, placed Defendants on notice of their infringing and illegal actions by sending a cease and desist letter to Defendants (the "C&D").  A true and correct copy of the C&D is attached hereto as **Exhibit K** and incorporated herein by reference.

55.     Despite the fact that the C&D was confirmed by Fed Ex as delivered on or about January 29, 2020, and notwithstanding Plaintiffs' counsel's follow-up reminders, Defendants failed to respond to the C&D altogether.

56.     Ideavillage also engaged the services of a third party takedown service, which requested the removal of certain listings for Infringing Products on Defendants' Website.  Such listings were temporarily removed, but then, upon information and belief, Defendants intentionally changed the host of Defendants' Website for the purpose of re-listing Infringing Products, and evading detection.

57.     In order to further investigate Defendants' continued, deliberate infringing activities, Plaintiffs' counsel placed additional test buys, on behalf of all Plaintiffs, for Infringing Products via Defendants' Website, which were shipped to New York.   Redacted order confirmations for Plaintiffs' counsel's test purchases, photographs of the Infringing Products and associated packaging received by Plaintiffs' counsel in New York, along with redacted photographs of the shipping packaging thereof, are attached hereto as **Exhibit L** and incorporated herein by reference.

58.     Plaintiffs have confirmed that the Infringing Products being displayed, offered for sale and/or sold by Defendants via Defendants' Website infringe Plaintiffs' Marks and/or Plaintiffs' Works.

59.     Defendants are not and have never been authorized by Plaintiffs to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell any ASOTV Products or to use Plaintiffs' Marks or Plaintiffs' Works, or any marks or artwork that are confusingly or substantially similar to Plaintiffs' Marks or Plaintiffs' Works.

60.     Many of Defendants' Infringing Products are nearly indistinguishable from Plaintiffs' ASOTV Products, with only minor variations that no ordinary consumer would recognize.

61.     By these dealings in Infringing Products (including, without limitation, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendants have violated Plaintiffs' exclusive rights in Plaintiffs' Marks and/or Plaintiffs' Works, and have used images and designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiffs' Marks and Plaintiffs' Works in order to confuse consumers into believing that such Infringing Products are ASOTV Products and aid in the promotion and sales of their Infringing Products.  Defendants' conduct began long after Plaintiffs' adoption and use of Plaintiffs' Marks and Plaintiffs' Works, after Plaintiffs obtained the U.S. registrations for the same, as alleged above, and after Plaintiffs' ASOTV Products and Plaintiffs' Marks became well-known to the purchasing public.

62.     Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of Plaintiffs' Marks and Plaintiffs' Works, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the ASOTV Products, and in bad faith adopted Plaintiffs' Marks and Plaintiffs' Works.

63.     In fact, even after being placed on notice, Defendants have continued to, at the very least, advertise, market, promote, display, offer for sale and/or sell Infringing Products.

64.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, Plaintiffs' Marks, Plaintiffs' Works, and Plaintiffs' ASOTV Products.

65.     Defendants' dealings in Infringing Products, as alleged herein, has caused, and will continue to cause, confusion, mistake, economic loss, and has and will continue to deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, thereby causing consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

66.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs: counterfeited and/or infringed Plaintiffs' Marks; infringed Plaintiffs' Works; and/or committed unfair competition.

67.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act)**
**[15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)]**

68.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     Plaintiffs are the owners and/or exclusive licensees of all right and title to Plaintiffs' Marks.

70.    Plaintiffs have continuously used Plaintiffs' Marks in interstate commerce since at least as early as the dates of first use reflected in the respective registrations, which are attached hereto as **Exhibits B**, **E**, and **H**.

71.    Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Plaintiffs' Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated Plaintiffs' Marks and/or used spurious designations that are identical with, or substantially indistinguishable, from one or more of Plaintiffs' Marks on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

72.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiffs' rights in and to Plaintiffs' Marks, through their participation in such activities.

73.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' Marks to packaging, point-of-purchase materials, online listings, promotions and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importation, exportation advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are

otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which Defendants are not entitled in law or equity.

74.     Defendants' unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiffs' Marks.

75.     Defendants' actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

76.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their businesses, reputations and valuable rights in and to Plaintiffs' Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Plaintiffs' Marks.

77.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

78.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.     Plaintiffs have continuously used Plaintiffs' Marks in interstate commerce since at least as early as the dates of first use reflected in the in the respective registrations, which are attached hereto as **Exhibits B**, **E**, and **H**.

80.     Plaintiffs, as the owners and/or exclusive licensees of all right, title and interest in and to Plaintiffs' Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

81.     Defendants were, at the time they engaged in their infringing actions alleged herein, actually aware that Plaintiffs are the owners and/or exclusive licensees of the federal trademark registrations for Plaintiffs' Marks.

82.     Defendants did not seek, and failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners and/or exclusive licensees of Plaintiffs' Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Infringing Products.

83.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiffs' Marks and/or which are identical or confusingly similar to Plaintiffs' Marks.

84.     Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiffs' Marks and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in

connection with, the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Defendants' Infringing Products.

85.     Defendants were, at the time they engaged in their illegal and infringing actions alleged herein, actually aware that Plaintiffs are the owners and/or exclusive licensees of all rights in and to Plaintiffs' Marks.

86.     Defendants' egregious and intentional use of Plaintiffs' Marks in commerce on or in connection with Defendants' Infringing Products has caused, and is likely to continue to cause actual confusion, to cause mistake and to deceive the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiffs' ASOTV Products or are otherwise associated with, or authorized by, Plaintiffs.

87.     Defendants' infringing actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in Plaintiffs' Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

88.     Defendants' continued, knowing and intentional use of Plaintiffs' Marks without Plaintiffs' consent or authorization, constitutes intentional infringement of the federally registered Plaintiffs' Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

89.     As a direct and proximate result of Defendants' illegal and infringing actions alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their businesses and valuable rights in and to Plaintiffs' Marks, and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to

cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Plaintiffs' Marks.

90.     Based on Defendants' infringing actions alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Infringement of Unregistered Trademarks)
### [15 U.S.C. § 1125/Lanham Act § 43(a)]

91.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

92.     Allstar has continuously used the Socket Shelf Mark in interstate commerce since at least as early as December 2018.

93.     Telebrands has continuously used the Cup Call Mark in interstate commerce since at least as early as January 2020.

94.     Allstar and Telebrands, as the owner and exclusive licensee of all right, title, and interest in and to the Socket Shelf Mark and Cup Call Mark, respectively, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

95.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Allstar and Telebrands each is the owner or exclusive licensee of the Socket Shelf Mark and Cup Call Mark, respectively.

96.     Defendants did not seek, and therefore necessarily failed, to obtain consent or

authorization from Allstar, as the trademark owner of the Socket Shelf Mark, and Telebrands, as the exclusive licensee of the Cup Call Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell ASOTV Products and/or related products bearing the Socket Shelf Mark or Cup Call Mark into the stream of commerce.

97.    Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold Infringing Products bearing and/or utilizing marks that are reproductions, copies, and/or colorable imitations of the Socket Shelf Mark and Cup Call Mark and/or that are confusingly similar to the Socket Shelf Mark and Cup Call Mark.

98.    Defendants knowingly and intentionally reproduced, copied, and colorably imitated the Socket Shelf Mark and Cup Call Mark, and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings, and/or advertisements used in commerce upon or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Defendants' Infringing Products.

99.    Defendants' egregious and intentional use of the Socket Shelf Mark and Cup Call Mark in commerce on or in connection with Defendants' Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Allstar's and Telebrands' respective ASOTV Products or are otherwise associated with or authorized by Allstar and/or Telebrands.

100.    Defendants' actions have been deliberate and committed with knowledge of Allstar's and Telebrands' respective rights and goodwill in the Socket Shelf Mark and Cup Call Mark, as well as with bad faith and the intent to cause confusion, mistake, and deception.

101.    Defendants' continued, knowing, and intentional use of the Socket Shelf Mark and Cup Call Mark without Allstar's or Telebrands' consent or authorization constitutes intentional infringement of Allstar's Socket Shelf Mark and Telebrands' Cup Call Mark in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125.

102.    As a direct and proximate result of Defendant's illegal actions alleged herein, Allstar and Telebrands have suffered substantial monetary loss and irreparable injury, loss, and damage to their businesses and  valuable rights in and to the Socket Shelf Mark and  Cup Call Mark, and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Allstar and Telebrands, and their respective, valuable Socket Shelf Mark and Cup Call Mark.

103.    Based on Defendant's actions as alleged herein, Allstar and Telebrands are entitled to injunctive relief, damages for the irreparable harm that they have sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

104.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs, as the owners and/or exclusive licensees of all right, title and interest in and to Plaintiffs' Marks, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

106.    Plaintiffs' Marks are inherently distinctive and/or have acquired distinctiveness.

107.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of Plaintiffs' Marks and Plaintiffs' Works, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Infringing Products, with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Plaintiffs' ASOTV Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiffs' Marks and Plaintiffs' Works, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

108.    By importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' ASOTV Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of, Plaintiffs' Marks and Plaintiffs' Works, Defendants have traded off the extensive goodwill of Plaintiffs and their ASOTV Products, and did in fact

induce, and intends, and will continue to induce, customers to purchase Infringing Products, thereby directly and unfairly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and Plaintiffs' Marks, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

109.    Defendants knew, or by the exercise of reasonable care, should have known, that their adoption and commencement, and continuing use in commerce, of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of Plaintiffs' Marks and Plaintiffs' Works would cause confusion, mistake, or deception among purchasers, users and the public.

110.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public, and with the intent to trade on the goodwill and reputation of Plaintiffs, their ASOTV Products and Plaintiffs' Marks and Plaintiffs' Works.

111.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their ASOTV Products and by depriving Plaintiffs of the value of Plaintiffs' Marks and Plaintiffs' Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Plaintiffs' Marks and Plaintiffs' Works.

112.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including

damages that Plaintiffs have sustained and will sustain as a result of Defendants; actions alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

113.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

114.    Plaintiffs are the exclusive owners of Plaintiffs' Works.

115.    Defendants had actual notice of Plaintiffs' exclusive rights in and to the Plaintiffs' Works.

116.    Defendants did not attempt and failed to obtain Plaintiffs' consent or authorization to use, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiffs' Works on or in connection with Infringing Products.

117.    Without permission, Defendants knowingly and intentionally reproduced, copied and displayed Plaintiffs' Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear Plaintiffs' Works, or artwork that is, at a minimum, substantially similar to Plaintiffs' Works.

118.    Defendants' unlawful and willful actions alleged herein, constitute infringement of Plaintiffs' Works, including, without limitation, Plaintiffs' exclusive rights to reproduce, distribute and/or sell the same in violation of 17 U.S.C. § 501(a).

119.    As a direct and proximate result of Defendants' knowing and intentional copyright infringement alleged herein, Plaintiffs have suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy

at law, and unless enjoined, Defendants will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiffs.

120.    Based on Defendants' unlawful and infringing actions alleged herein, Plaintiffs are entitled to injunctive relief 17 U.S.C. § 502, Plaintiffs' actual damages and Defendants' profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for the willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiffs' damages in an amount to be

proven at trial for willful trademark infringement of Plaintiffs' federally registered Plaintiffs' Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for unregistered trademark infringement and false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of Plaintiffs' Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement, pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.      manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

      ii.     directly or indirectly infringing in any manner any of Plaintiffs' trademarks,

copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks or Plaintiffs' Works;

iii.   directly or indirectly using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Plaintiffs' Works to identify any goods or services not authorized by Plaintiffs;

iv.   directly or indirectly using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Plaintiffs' Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiffs' Marks and Plaintiffs' Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

v.   directly or indirectly using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered

for sale, or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.     directly or indirectly engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii.     directly or indirectly engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.     directly or indirectly engaging in any other act in derogation of Plaintiffs' rights;

ix.     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

x.     instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

H.     For an order of the Court requiring that Defendants destroy any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in Defendants' possession, custody or control that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation Plaintiffs' Marks or Plaintiffs' Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Plaintiffs' Works pursuant to 15 U.S.C. § 1118;

I.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Infringing Products as described herein, including prejudgment interest;

J.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession, which rightfully belong to Plaintiffs;

K.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.      For Plaintiffs' reasonable attorney's fees;

M.      For all costs of suit; and

N.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Dated: May 13, 2020                              Respectfully submitted,

                                                 **EPSTEIN DRANGEL LLP**

                                                 BY:     /S Kerry B.  Brownlee
                                                         Kerry B. Brownlee (KB 0823)
                                                         kbrownlee@ipcounselors.com
                                                         Jason M. Drangel (JD 7204)
                                                         jdrangel@ipcounselors.com
                                                         Ashly E. Sands (AS 7715)
                                                         asands@ipcounselors.com
                                                         New York, NY 10165
                                                         Telephone: (212) 292-5390
                                                         Facsimile: (212) 292-5391
                                                         *Attorneys for Plaintiffs*